UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN THORNHILL,<br><br>Plaintiff,<br><br>v.<br><br>MCLANE FOODSERVICE, INC.,<br><br>Defendant. | Case No. 25-cv-07475-EKL<br><br>**ORDER DENYING MOTION TO REMAND**<br><br>Re: Dkt. No. 15 |

This putative class action alleging California wage-and-hour violations was removed to federal court pursuant to the Class Action Fairness Act ("CAFA"). *See* Notice of Removal, ECF No. 1 ("Notice"). Plaintiff now moves to remand the case to state court, arguing that Defendant has not met its burden to establish the requisite amount in controversy. Mot. to Remand, ECF No. 15 ("Motion"). Having carefully reviewed the parties' submissions and relevant authority, the Court finds this matter suitable for disposition without oral argument. *See* Civil L.R. 7-1(b). Because Defendant has met its burden to show that more than $5 million is at stake in this case, the motion to remand is DENIED.

## I.    BACKGROUND

Plaintiff John Thornhill worked for Defendant McLane Foodservice, Inc. in California "as an hourly-paid, non-exempt employee from approximately November 2021 to approximately July 2023." Compl. ¶¶ 7, 13, ECF No. 1-1. According to the complaint, Defendant "repeatedly and frequently scheduled Plaintiff to work at least five days in a workweek and at least eight hours per day, but Plaintiff also worked more than eight hours in a workday and more than forty (40) hours in a workweek." *Id*. ¶ 13. Plaintiff alleges that, throughout his employment, Defendant "at times, failed to pay Plaintiff for all hours worked (including minimum, straight time, and overtime

wages), failed to provide Plaintiff with legally compliant meal periods, failed to authorize and permit Plaintiff to take rest periods, failed to timely pay all final wages to Plaintiff when Defendant[] terminated Plaintiff's employment, failed to furnish accurate wage statements to Plaintiff, and failed to indemnify Plaintiff for expenditures." *Id.* ¶ 14. Beyond this, the complaint does not allege any facts regarding Plaintiff's job title, the nature of his work, the tasks that he performed, or the circumstances under which Defendant allegedly failed to compensate him.

Plaintiff brings this case on behalf of a putative class consisting of all persons who worked for Defendant in California "as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." *Id*. ¶ 24. The complaint is equally nondescript about the nature of the work performed by putative class members, or the circumstances under which Defendant allegedly failed to compensate them. The complaint alleges in general terms that, "[t]hroughout the statutory period, Defendant[], at times, failed to pay Plaintiff and some of, but not necessarily all of, the Class for all hours worked, including minimum, straight time, and overtime wages." *Id.* ¶ 15. Plaintiff recites this formula – that Defendant "at times" violated the California Labor Code with respect to "some of, but not necessarily all of, the Class" – throughout the complaint. *See, e.g., id.* ¶¶ 15-20.

Plaintiff asserts eight causes of action: (1) failure to pay minimum and straight-time wages (Cal. Lab. Code §§ 204, 1194, 1194.2, 1197, 1197.1); (2) failure to pay overtime wages (Cal. Lab. Code §§ 1194, 1198); (3) failure to provide meal periods (Cal. Lab. Code §§ 226.7, 512); (4) failure to authorize and permit rest periods (Cal. Lab. Code § 226.7); (5) failure to timely pay final wages at termination (Cal. Lab. Code §§ 201-203); (6) failure to provide accurate itemized wage statements (Cal. Lab. Code § 226); (7) failure to indemnify employees for expenditures (Cal. Lab. Code § 2802); and (8) violations of the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 *et seq*.).

The complaint does not allege any specific damages figure. Instead, Plaintiff seeks "damages in amounts which are presently unknown to Plaintiff and the Class, and which will be ascertained according to proof at trial." Compl. ¶ 36. The complaint further alleges that

Defendant's purported violations "have made it difficult to calculate the full extent" of compensation due. *Id*. ¶ 37; *see also id*. ¶¶ 46-47, 70 ("Calculation of the true wage entitlement for Plaintiff and some of, but not necessarily all of, the Class is difficult and time consuming."). The complaint demands attorneys' fees and costs. *See, e.g., id*. ¶¶ 40, 48, 64, 77.

This case was originally filed in Santa Clara County Superior Court. *See* ECF No. 1-1. On September 4, 2025, Defendant removed the case pursuant to CAFA. *See* Notice. The notice of removal plausibly alleged the requirements for CAFA jurisdiction: The case is a class action involving at least 100 class members, minimum diversity of citizenship exists, and the amount in controversy exceeds $5 million. Notice ¶¶ 14-43. With respect to the amount in controversy, Defendant estimated that $5,990,558.25 is at stake in the litigation based solely on Plaintiff's fifth and sixth causes of action – for waiting time penalties and wage statement violations, respectively – and related attorneys' fees. *Id*. ¶ 43 (summarizing estimates). The estimate was based on "voluminous payroll, employment, and operational data" for the putative class members. *Id.* ¶ 30. This data revealed the size of the putative class, average hourly pay and shift length, and the number of wage statements Defendant issued during the relevant period. *Id*.

On October 31, 2025, Plaintiff filed a motion to remand challenging Defendant's amount-in-controversy allegations. *See* Mot. In response to the motion, Defendant added estimates of the amount in controversy with respect to Plaintiff's other causes of action. *See* Opp., ECF No. 19. With these additions, and a corresponding increase in estimated attorneys' fees, Defendant now estimates the total amount in controversy to be $11,092,852.86. Defendant also submitted the declaration of Samantha Watson, Defendant's director of payroll and human resources information systems, who "oversee[s] all day-to-day payroll operations, systems, and functions" for Defendant. Watson Decl. ¶ 2, ECF No. 19-1. Defendant's updated estimate of the amount in controversy is summarized in the following chart, *see* Opp. at 10:

| CLAIM | *CAFA* AIC |
|---|---|
| Overtime Wages Violations | $931,670.83 |
| Off-The-Clock Minimum Wage Violations | $114,797.76 |
| Meal Break Violations | $1,426,053.28 |
| Rest Break Violations | $1,549,540.69 |
| Waiting Time Penalties | $2,497,746.60 |
| Wage Statement Penalties | $2,294,700.00 |
| Expense Reimbursement | $59,773.13 |
| SUBTOTAL | $8,874,282.29 |
| Attorneys' Fees @ 25% Benchmark | $2,218,570.57 |
| Total AIC | $11,092,852.86 |

## II.   REQUESTS FOR JUDICIAL NOTICE

Courts may take judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Plaintiff and Defendant each request judicial notice of certain materials. *See* Pl.'s Req. for Judicial Notice, ECF No. 15-1 ("Pl.'s RJN"); Def.'s Req. for Judicial Notice, ECF No. 20 ("Def.'s RJN"). Plaintiff's request is DENIED, and Defendant's request is GRANTED.

Plaintiff requests judicial notice of remand orders issued by other federal district courts – and the complaints in those cases – to demonstrate that courts have remanded cases like this one. *See* Pl.'s RJN. Plaintiff's request is denied because a "court may not (and need not) take judicial notice of judicial precedent." *Rhodes v. Robinson*, 399 F. App'x 160, 165 (9th Cir. 2010). Judicial notice applies only to "adjudicative" facts, which are "the facts of the particular case."[1] *Valdivia v. Schwarzenegger*, 599 F.3d 984, 994 (9th Cir. 2010) (quoting Fed. R. Evid. 201

---

[1] By contrast, it may be appropriate to take judicial notice of court documents when they relate to the parties and the facts of the case before the court. For example, Plaintiff cites *Holder v. Holder*, 305 F.3d 854 (9th Cir. 2002). In *Holder*, the Ninth Circuit took judicial notice of a trial court opinion and the parties' briefs to determine whether an issue was "actually litigated and necessarily decided" for purposes of issue preclusion. *Id*. at 866. In that context, the court documents were adjudicative facts because they related to the parties' conduct in earlier proceedings. *Holder* does not support Plaintiff's request for judicial notice of opinions and court documents in *unrelated* cases for the purpose of supporting a legal argument.

United States District Court
Northern District of California

advisory committee's note).  Of course, courts may consider judicial precedent *without* taking judicial notice.  *See Jones v. Curry*, No. C 07-1013 RMW (PR), 2008 WL 3550866, at *2 (N.D. Cal. Aug. 13, 2008) ("If a party wants the court to consider a published decision, it is sufficient to cite the decision in his brief.").  The Court considered Plaintiff's legal authority in ruling on the motion to remand.

Defendant seeks judicial notice of the "California minimum wage rates from 2021 through 2025, which is published on the California Division of Labor Standards Enforcement's ('DLSE') internet website."  Def.'s RJN at 1.  The Court will consider this information because it is a proper subject of judicial notice.  Plaintiff did not oppose the request or dispute the accuracy of the rates.

## III.    LEGAL STANDARD

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441(a). Relevant here, CAFA permits removal "if there is minimal diversity between the parties (that is, at least one plaintiff is a citizen of a different State from at least one defendant), if the class contains at least 100 members, and . . . if the amount in controversy exceeds $5 million."  *Perez v. Rose Hills Co.*, 131 F.4th 804, 807 (9th Cir. 2025) (citing 28 U.S.C. §§ 1332(d), 1453(b)).  Unlike in other contexts, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (citations omitted).  Courts should interpret CAFA "expansively."  *Ibarra v. Manheim Inv., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

The removing party has the burden of establishing federal jurisdiction.  *Holcomb v. Bingham Toyota*, 871 F.2d 109, 110 (9th Cir. 1989); *see also Perez*, 131 F.4th at 808.  The defendant may initially satisfy this burden by filing a notice of removal that contains "a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  The notice of removal "need not contain evidentiary submissions" to support the amount in controversy:  A "plausible allegation that the amount in controversy exceeds the jurisdictional threshold" is sufficient.  *Dart Cherokee*, 574 U.S. at 84, 89.  However, when "a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of

United States District Court
Northern District of California

the evidence, whether the amount-in-controversy requirement has been satisfied." *Id*. at 88.  The parties may submit evidence including affidavits or declarations or other "summary-judgment-type evidence[.]" *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).  The defendant may also rely on "reasonable assumptions based on the plaintiff's complaint." *Perez*, 131 F.4th at 806; *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922, 925 (9th Cir. 2019) ("An assumption may be reasonable if it is founded on the allegations of the complaint.").

The amount in controversy is the "amount at stake in the underlying litigation." *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)).  It includes "damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract." *Id*.  The amount in controversy should not be confused with the defendant's "likely or probable liability." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022) (quotation omitted).  Instead, it "reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927; *see also Jauregui*, 28 F.4th at 994; *Chavez v. JPMorgan Chase & Co*., 888 F.3d 413, 414-15 (9th Cir. 2018) (The amount in controversy "encompasses all relief a court may grant on that complaint if the plaintiff is victorious.").

## IV.     DISCUSSION

The sole issue for the Court to decide is whether Defendant has met its burden to show, by a preponderance of the evidence, that the amount in controversy exceeds $5 million.[2]  Plaintiff argues that Defendant has failed to meet its burden for three reasons.  First, Defendant relied on an inadequate declaration from its company representative.  Second, Defendant made unreasonable assumptions about the violation rates – *i.e.*, the frequency with which Defendant violated the California Labor Code.  Third, Defendant unreasonably assumed a 25% attorneys' fee award.  The Court addresses these arguments in turn.

---

[2] The Court finds that Defendant has met its burden as to the other requirements for CAFA removal.  *See* Notice ¶¶ 14-43 (establishing minimal diversity and a class size exceeding 100). Plaintiff does not dispute that these requirements are met, nor does he invoke any exception to CAFA jurisdiction.

United States District Court
Northern District of California

### A.    The Sufficiency of Defendant's Declaration

Plaintiff faults Defendant for relying solely on a declaration from Samantha Watson, Defendant's director of payroll and human resources information systems, to support aspects of its amount-in-controversy estimate.  The Watson Declaration provides detailed information regarding:  (1) the number of potential class members; (2) their average base rate of pay; (3) the number of shifts they worked during the relevant period that were eligible for breaks; (4) the number of shifts eligible for overtime pay; and (5) the number of employees who were terminated within the relevant period.  Watson Decl. ¶ 5.  Plaintiff advances three criticisms:  that the declaration lacks "corroborating documents," that it is "self-serving," and that it does not support Defendant's assumed violation rates.  See Mot. at 6-7; Reply at 7-8, ECF No. 21.  These arguments are unpersuasive.

First, Plaintiff cites no precedential authority holding or implying that an otherwise-admissible declaration must be accompanied by corroborating documents to satisfy a defendant's evidentiary burden.  An amount-in-controversy estimate must be supported by "summary-judgment-type evidence," Singer, 116 F.3d at 377, and a declaration "made on personal knowledge" by someone who "is competent to testify on the matters stated" is summary-judgment-type evidence, Fed. R. Civ. P. 56(c).  Moreover, the Ninth Circuit's published decisions have consistently approved the use of affidavits and declarations to establish or contest the amount in controversy for purposes of CAFA removal.  See, e.g., Ibarra, 775 F.3d at 1197; Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 397 (9th Cir. 2010).[3]  Based on these authorities, an affidavit or declaration that meets the requirements of Rule 56 may satisfy a defendant's burden of proof, regardless whether the defendant produces other documentary evidence.

---

[3] Plaintiff cites Garibay v. Archstone Communities, LLC, for the proposition that a court may reject an amount-in-controversy estimate that is supported only by a declaration from the defendant's director of payroll.  539 F. App'x 763, 764 (9th Cir. 2013).  But Garibay's reasoning focused on the defendant's speculation about "key unknown variables" – the Ninth Circuit did not hold that declarations are categorically insufficient.  See id.  In any event, "Garibay is an unpublished non-binding opinion that other courts in this district have declined to follow in view of conflicting published Ninth Circuit decisions."  Salonga v. Aegis Senior Cmtys., LLC, No. 22-cv-00525-LB, 2022 WL 1439914, at *7 (N.D. Cal. May 6, 2022) (collecting cases).

Second, it is immaterial that a declaration is "self-serving" absent some other deficiency that undermines its evidentiary value. A district court may "disregard a self-serving declaration that states only conclusions and not facts that would be admissible evidence," but the court "may not disregard a piece of evidence . . . solely based on its self-serving nature." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015); *see also SEC v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (same). Here, Plaintiff does not argue that Watson lacks personal knowledge to testify to the facts in her declaration based on her role as Defendant's director of payroll. Watson Decl. ¶¶ 2-3. Watson offers detailed facts, not mere conclusions. These facts are based on Watson's review of Defendant's "voluminous timekeeping records, payroll data, wage records, personnel records, and employment data." *Id*. ¶¶ 4-5. Thus, the Court may not disregard the Watson Declaration solely because it supports Defendant's position – which is unsurprising. *Nigro*, 784 F.3d at 497 (acknowledging that "declarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position").

Finally, Plaintiff argues that the Watson Declaration does not evidence "(1) the alleged violation rates; or (2) the percentage of class members purportedly affected by Defendant's violations." Mot. at 7. However, Defendant does not rely on the Watson Declaration for these elements of the amount-in-controversy estimate. Instead, Defendant makes assumptions based on the allegations in the complaint. The Court now turns to address these assumptions.

### B.    The Reasonableness of Defendant's Violation Rate Assumptions

In estimating the amount in controversy, Defendant applies several assumptions regarding the alleged violation rates. Plaintiff views these assumptions as unreasonable and unsupported.

Although the defendant bears the burden to show that the amount in controversy exceeds $5 million, this burden does not always require the defendant to produce evidence supporting every element of its amount-in-controversy estimate. "Because '[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability,' a removing defendant need not present evidence of what its ultimate liability will be – in many cases, the defendant presumably expects that figure to be zero." *Perez*, 131 F.4th at 808 (quoting *Lewis*, 627 F.3d at 400). Instead, the defendant may rely on a "chain of reasoning" that

includes reasonable assumptions. *Id.* (quoting *Arias*, 936 F.3d at 925); *see also Ibarra*, 775 F.3d at 1199. "What makes an assumption reasonable may depend on which element of the amount-in-controversy calculation is at issue." *Perez*, 131 F.4th at 808. For example, in a wage-and-hour case like this one, it "may make sense to expect a defendant to introduce evidence" of "the number of employees in the class" if such information can be determined from the defendant's records. *Id.* "By contrast, it makes little sense to require a CAFA defendant to introduce evidence of the violation rate . . . because the defendant likely believes that the real rate is zero and thus that the evidence does not exist." *Id.* Therefore, a defendant "can most readily ascertain the violation rate by looking at the plaintiff's complaint." *Id.* However, "if a violation rate cannot be justified by the allegations in the compliant, it must be justified by something else." *Id.* at 809.

Here, the Court finds that Defendant's violation rate assumptions are reasonably based on the allegations in the complaint, as applied to the undisputed facts about the putative class that are supplied by the Watson Declaration.

First, Defendant assumes that certain Labor Code violations affected 20% of the shifts for which a violation may have occurred. For example, Defendant assumes that the class will claim non-payment of overtime wages for 20% of overtime-eligible shifts. Opp. at 7. Likewise, Defendant assumes that the class will claim unpaid minimum wages for work performed during meal breaks for 20% of eligible shifts. *Id.* at 7-9. Defendant also assumes that rest breaks were denied for 20% of eligible shifts. *Id.* at 9. Defendant bases the 20% violation rate on the complaint's nondescript allegations that the violations affected "some of, but not necessarily all" class members, and that the violations occurred "at times" "[t]hroughout the statutory period." *See, e.g.*, Compl. ¶¶ 15-17. The assumption of a 20% violation rate is reasonable: Alleging that a violation occurred "at times" and "[t]hroughout the statutory period" suggests that the conduct occurred with some regularity and frequency, but not always or even more-often-than-not. The complaint does not foreclose Defendant's assumption, nor does it provide any principled basis for assuming a different violation rate. (Indeed, Plaintiff offers no alternative rate.) Instead, the complaint is barebones – it offers no details about the nature of putative class members' work or the circumstances under which violations allegedly occurred.

Second, Defendant assumes that class members who incurred unreimbursed business expenses did so at a rate of $20 per month. Opp. at 9. This estimate translates into an average per-workday expense of 92 cents, which is then further reduced by applying the same 20% violation rate as above. *Id*. This estimate implies that Defendant failed to reimburse expenses incurred one in every five workdays. This is a reasonable and modest estimate based on the complaint's allegation that unreimbursed expenses were "substantial." *See id*. ¶ 74. Again, the complaint offers no reason to reject this assumption. Nor does the complaint provide any details – such as the types of expenses that class members purportedly incurred – that may permit a more fact-specific approach to estimating the amount in controversy.

Third, Defendant assumes that 100% of employees who were terminated during the statutory period will claim that Defendant failed to timely pay their final wages upon termination. Notice ¶¶ 31-33. Defendant further assumes that every terminated employee will seek to recover the maximum 30-day waiting time penalty, which implies that no terminated employee was fully paid within 30 days after their termination. *Id*. ¶¶ 34-35. These assumptions are reasonable because if a terminated employee experienced *any* violation alleged in the complaint, that employee was underpaid and thus did not receive all wages due at the time of their termination. *See id*. ¶ 33 (collecting cases). It is reasonable to assume that every terminated class member experienced *at least* one of the alleged violations *at least once*, otherwise the terminated employee would not have a claim in the first place.[4] It is also reasonable to apply the full 30-day penalty based on the assumption that all or most of the violations "would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-day penalty."

---

[4] It would be unreasonable to assume that more than a *de minimis* number of terminated employees were completely unaffected by the alleged Labor Code violations. Such an assumption would contradict Plaintiff's allegation that there "are common questions of law and fact as to the Class . . . that predominate over questions affecting only individual members." *Id*. ¶¶ 28-29; *see also id*. ¶¶ 11, 29(g) (alleging that Defendant acted "on grounds generally applicable to the Class"). Indeed, assuming that there are a significant number of unaffected class members may be inconsistent with maintaining this case as a class action generally. *See Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 28-29 (2014); Order at 7 & n.2, *Banuelos v. Dominos Pizza, LLC*, No. 24-cv-07085-BLF (N.D. Cal. Mar. 12, 2025) (Plaintiff's allegations that defendant "at times" failed to provide mandated compensation and benefits to "some, but not necessarily all employees" "may work against Plaintiff at the class certification stage.").

*Jauregui*, 28 F.4th at 994.[5]

Collectively, these violations alone put $6,579,582.29 at stake.[6] Defendant supported its estimates with uncontroverted evidence from the Watson Declaration, and the only gaps – the assumed violation rates – are filled by reasonable assumptions tied to the allegations in the complaint. Therefore, Defendant has met its burden to show that the amount in controversy exceeds $5 million.

Plaintiff argues that Defendant's assumptions are arbitrary because it is equally possible that the alleged violations occurred less frequently, based on the nondescript allegations in the complaint. *See* Reply at 6. This argument misunderstands the defendant's burden. Although the defendant must show that the amount in controversy more likely than not exceeds $5 million, it does not follow that the defendant must show that its assumed violation rate is "more reasonable" than any other possible violation rate. Such a requirement conflates reasonableness with factual accuracy, and it would make the defendant's burden exceedingly difficult in practice when faced with boilerplate complaints like the one in this case. Rather, the defendant can meet its burden if its assumptions are reasonable, meaning that they have "some reasonable ground underlying them." *Ibarra*, 775 F.3d at 1199; *see also Arias*, 936 F.3d at 927; *Perez*, 131 F.4th at 809 ("[A]n assumption is not unreasonable simply because another equally valid assumption may exist."). Of course, a plaintiff is "free to use some more specific phrase than 'at times' when drafting the complaint . . . [in order to] constrain[] the range of assumptions that [defendant] could reasonably adopt." *Perez*, 131 F.4th at 810. But where the complaint makes nondescript allegations that permit a range of reasonable inferences, a defendant should not be faulted for making one

---

[5] The complaint seeks damages "for each day [wages] were not paid . . . up to thirty (30) days." Compl. ¶ 63. Plaintiff cryptically argues that it would be unreasonable to assume the maximum 30-day penalty because the complaint uses the phrase "each day" instead of "every day." Reply at 5. It is not clear how these phrases convey different meanings in context, and Plaintiff offers no explanation. Regardless, it makes no difference because the complaint expressly seeks damages up to the maximum, and the amount in controversy is the "*maximum* recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927.

[6] Accordingly, the Court does not need to reach Defendant's estimated amount in controversy for the alleged wage statement violations. *See* Notice ¶¶ 36-39. Defendant also assumes that the class will seek a 25% attorneys' fee award added to the total damages estimate, which the Court addresses in the next section.

11

reasonable inference over another – absent some reason to conclude that the selection is unreasonable.[7]

Plaintiff also cites inapposite authority. For example, in *Harris v. KM Industrial, Inc.*, the Ninth Circuit concluded that it was unreasonable to assume a 100% violation rate where the plaintiff alleged a series of Labor Code violations on behalf of separate "meal period" and "rest period" subclasses. 980 F.3d 694, 700-01 (9th Cir. 2020). The defendant had no basis to assume that "the two subclasses were the same and that they all worked shifts long enough to qualify for meal and rest periods." *Id.* at 701. This reasoning does not apply here because the complaint alleges one class, and Defendant assumes only that each terminated employee experienced at least *one* violation (not every violation). Plaintiff cites *Ryan v. Mission Treatment Services, Inc.*, for the proposition that "the number of unpaid hours per week is highly dependent on the facts and circumstances of each individual case." No. 22-cv-04013-ODW (MARx), 2022 WL 4331093, at *3 (C.D. Cal. Sep. 19, 2022). But this principle does not provide any meaningful guidance when the complaint offers **no detail** about the "facts and circumstances" of Plaintiff's work, the alleged Labor Code violations, or the circumstances under which the violations allegedly occurred. Plaintiff also cites *Lopez v. Advanced Drainage Systems, Inc.*, but a primary issue in that case – not relevant here – was the defendant's "duplicative and unjustified" assumptions that double-counted certain categories of damages. 777 F. Supp. 3d 1100, 1106-07 (N.D. Cal. 2025). In sum, none of the cases cited by Plaintiff support his position that Defendant's assumption are unwarranted given the allegations in the complaint.

## C.    The Reasonableness of Defendant's Attorneys' Fees Assumption

Finally, Plaintiff argues that Defendant failed to support its estimate that $2,218,570.57 in attorneys' fees are at stake in this case. "[A] court must include future attorneys' fee recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met."

---

[7] Some district courts "[f]aced with a vague pleading" have favored remand, so that defendants may "try to pin Plaintiff down[] in state court . . . with respect to what the Complaint's allegations actually mean with respect to violation rates." *Toribio v. ITT Aerospace Controls LLC*, No. CV 19-5430-GW-JPRx, 2019 WL 4254935, at *3 (C.D. Cal. Sep. 5, 2019). This approach seems inconsistent with the Ninth Circuit's recent decision in *Perez*, and the principle that CAFA was "designed to settle jurisdictional issues early." *Lewis*, 627 F.3d at 398.

United States District Court
Northern District of California

*Fritsch*, 899 F.3d at 794. As with other aspects of the amount in controversy, Defendant bears the burden of supporting the estimate of attorneys' fees "by a preponderance of the evidence" based on "summary-judgment-type evidence." *Id*. at 795. There is no doubt that attorneys' fees are at stake in this case. *See* Compl. ¶¶ 40, 48, 64, 77. The only issue is whether Defendant's estimate is sufficiently supported.

Defendant reached its estimate by applying a 25% benchmark for attorneys' fees to the damages estimates discussed above. Defendant argues that the Ninth Circuit has used the 25% benchmark to assess the reasonableness of fee awards in common fund class action settlements. *See* Notice ¶ 42 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees."); *see also* Opp. at 10. Plaintiff argues that the Ninth Circuit has "rejected" this approach for purposes of establishing the amount in controversy for CAFA removal. Mot. at 8-9.

The Ninth Circuit has left open the possibility of using "a percentage-based" method of estimating fees as part of the amount-in-controversy inquiry. *Fritsch*, 899 F.3d at 796 n.6. However, the Ninth Circuit has rejected a "per se rule" that, "as a matter of law, the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." *Id*. at 796. Such a rule would improperly "relieve the defendant of its evidentiary burden." *Id.* Moreover, the fee calculation is "limited by the applicable contractual or statutory requirements that allow fee-shifting in the first place." *Id*. Thus, a percentage-based fee estimate may be inappropriate if the fee-shifting statute employs the "lodestar method for determining reasonable attorneys' fees under certain statutes." *Id*. The lodestar method fixes a fee award "at the fair market value for the particular action" based on the "number of hours reasonably expended multiplied by the reasonable hourly rate." *Ketchum v. Moses*, 24 Cal. 4th 1122, 1132-34 (2001). The lodestar figure may be adjusted based on several factors including "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Id*. at 1132.

13

Here, Defendant offers no specific reason why the 25% benchmark is appropriate in this case. Nor does Defendant offer an alternative basis for estimating the attorneys' fees at stake – for example, by relying on the lodestar approach or citing to fee awards in comparable cases. Thus, although *some* fee award must be included in the amount in controversy, the Court has no principled basis for selecting an appropriate estimate. Given that Defendant has met its amount-in-controversy burden even without including attorneys' fees, the Court need not guess. *Arias*, 936 F.3d at 928 n.5 (recognizing that there is "no need to calculate attorneys' fees" where the "damages in controversy [alone] exceed the jurisdictional threshold").

## V.    CONCLUSION

For the foregoing reasons, Defendant has met its burden to establish that this Court has subject matter jurisdiction pursuant to CAFA. Therefore, Plaintiff's motion to remand is DENIED.

**IT IS SO ORDERED.**

Dated: January 16, 2026

Eumi K. Lee
United States District Judge

United States District Court
Northern District of California